UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 22-cr-00066-RMR

UNITED STATES OF AMERICA

      Plaintiff,

v.

1.     MATTHEW CHRISTOPHER HARRIS,

      Defendant.

_____

**GOVERNMENT'S MOTION FOR A COURT ORDER OF COMMITMENT AND BRIEF UNDER 18 U.S.C. § 4243**

_____

The United States of America, by and through Matthew T. Kirsch, Acting United States Attorney for the District of Colorado, and Alison Connaughty, Assistant United States Attorney, and James Peterson, Trial Attorney, respectfully file this Motion for a Court Order of Commitment Under 18 U.S.C. § 4243 and Brief prior to the hearing currently scheduled for December 12, 2024. The government respectfully asks this Court to find by clear and convincing evidence that the defendant's release into the community would create a serious risk of bodily injury to another person or serious damage to the person of another.

**I.    PROCEDURAL BACKGROUND**

The defendant was charged by indictment with two counts of making interstate threats in violation of 18 U.S.C. § 875(c), false statements to obtain a firearm in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2), and possession of a firearm by a person previously committed to a mental institution in violation of 18 U.S.C. § 922(g)(4).   The

charges relate to the defendant's harassing and threatening conduct towards a former colleague, as well as students he had contact with at UCLA.   In January 2021, the defendant started sending his mother, R.H., concerning emails expressing the intent to murder a colleague of his, K.R.   Mr. Harris also made statements by email about schizophrenia and hearing voices.   The defendant continued to send disturbing emails to R.H. and fellow colleagues and students through March 30, 2021, when he was reported to the UCLA Police Department (UCLA PD). The disturbing emails contained references to mass shootings, violence towards feminists, and references to pedophilia.

The defendant's mother intervened to force a mental health intervention.   On April 14, 2021, FBI agents from Charlotte, North Carolina, and Deputies with the Guilford County Sheriff's Office contacted R.H. and convinced her to take out an Involuntary Commitment Order on Mr. Harris.   The doctor at a mental health facility recommended a 20-day involuntary commitment on the grounds that Mr. Harris was an individual with a mental illness who was a danger to himself or others.

The defendant was released and on May 11, 2021 Mr. Harris returned to Los Angeles.   On the same date, the UCLA PD requested and obtained a Gun Violence Emergency Protective Order for Mr. Harris. Mr. Harris was contacted at his residence and advised of the Order.   Mr. Harris left Los Angeles, California, on approximately June 1, 2021.   Before his departure, Mr. Harris was provided with a copy of another temporary restraining order prohibiting him from going near any California college campuses, having contact with K.R., and possessing any firearms.   On August 4, 2021, Mr. Harris flew to Denver and rented an apartment.   Despite being served with an order prohibiting him from possessing firearms, on September 8, 2021, Mr. Harris purchased

a single box of .38 special ammunition with cash at the Silver Bullet Shooting Range, located at 5901 W. 38th Avenue, Wheat Ride, Colorado.   On November 2, 2021, Mr. Harris obtained a Colorado Driver's License. On that same date, he attempted to purchase a .38 caliber Smith and Wesson model "Bodyguard" revolver with serial number CVJ1787 at the Silver Bullet Shooting Range.

Between November 2, 2021, and January 29, 2022, Mr. Harris conducted a number of internet searches related to firearms and explosives on his cellular telephone, including the following; filing off gun serial number, untraceable gun, best home defense gun, ghost gun, 3d printing gun, pipe bomb, how to make a pipe bomb, pressure cooker bomb, and how to trace gun without serial number.   On January 31, 2022, at approximately 3:13 pm MST, Mr. Harris sent an email from his address matthewharris468@yahoo.com to 36 email addresses directing recipients to a google drive containing an 803-page manifesto titled "death sentences" by Dr. Matthew C Harris.   The defendant's 803-page manifesto is still available publicly on the internet. *See* https://dn790005.ca.archive.org/0/items/death-sentences-dr.-matthew-c.-harris-manifesto/Death%20Sentences%20-%20Dr.%20Matthew%20C.%20Harris%20-%20Manifesto.pdf, last accessed Sept. 27, 2024.

The manifesto detailed plans to harm victims such as K.R. and plans to conduct a mass shooting on UCLA campus. Quotes from the manifesto include the following:

> "BURN AND ATTACK BOULDER OUTSIDE BY THE UNIVERSITY."
> "GENOCIDE THEM my NIGGER. Schoolyard massacre. University disaster. Take your pick."
> "Kill her at the university where she works."
> "Assassinate the toms at the university."
> "Hunt them where they work. Find out when they will have company gatherings or university welcomings. Kill their children at freshman orientation. Shoot them at the opening weekend."

"Bombs at middle schools, no threats. Shot gun columbine university slaying."
"How many times do Niggers need to protest nicely before they realize it doesn't work — stop responding to your mother's advice she says 'get over it dust it off act like it didn't happen" when what you need to do is get retribution. Take out what happened to you when this happens get retribution. Retribute. The violence. Retaliation. Suicide bombs."
"57. ONE RIFLE one AK with a scope can put ALL OF THEM at they little richie nursery school to shame 58. SHOW RITCHIE RICH WHAT IT REALLY DO 59. One gun can stop them all where they stand one gun and one shooting is all you need."
"could've been fucking danielle and but I never did. Eventually I would murder her anyway so I could get back to better bitchesThe DC sniper had the capital of the strongest nation on the planet in terror on its knees cowering like a village of bitches. That was just one NIGGER in a van with a little boy helping him. ONE NIGGER WITH A SNIPER RIFLE BROUGHT DC TO TEARS AND TREADING IN FEAR. ONE NIGGER MAKE THE MIGHTIEST ARMY AND ALL THE KINGS HORSES AND ALL THE KINGS MEN SCARED AS A BUNCH OF SCHOOLGIRLS. ONE NIGGER. SNIPER RIFLE ONLY COST $500. ALL YOU NEED TO DO IS GO TO THAT BOARDING SCHOOL AND SNIPE SNIP SNIPP SNIP AT THE SKULL OF THOSE CHILDREN. ATTACH A SCOPE TO AN ASSAULT RIFLE. HIT THOSE RICHIES WITH AN AK-47. RITCHIE RICH WON'T KNOW WHAT HIT HIM. SHOOT THE FUCK OUT OF THOSE LITTLE PIGLETS."
"SHOOT THOSE LITTLE FUCKS UP WHERE THEY BREATH, BREED AND GO TO SCHOOL."
"ill all servicemen. Kill all marines. Kill all senators. Kill all military veterans. Kill all comedians. Kill all musicians. Kill all artists. Kill all professors. Kill all CEOs. Kill all presidents. Kill all rich people. Kill all writers and diplomats. Kill all truckers. Kill all audio engineers.
BOMB THE AIRPORT AT THE GATE! NIGGER kill all the kikes. NIGGER kill all the chink-mongoloids. NIGGER kill all the red-mongoloids. NIGGER kill all of the kike-ottomans. NIGGER kill all of the crackers. NIGGER kill all of the children of other tribes. KILL ALL THEIR KIDS. KILL POLITICIANS DON'T ELECT THEM ANYMORE."

The email also contained links to Mr. Harris's Youtube channel, Soundcloud account, and Apple Music account. These channels included videos depicting images from other mass shootings, lyrics intimating plans to cause harm on UCLA campus, and sexual imagery.

On June 21, 2022, the defendant provided the government with Notice of an Intent to Present an Insanity Defense under Federal Rule of Criminal Procedure 12.2 [ECF #41].

This Court found the defendant not guilty only by reason of insanity on September 19, 2024 [ECF #100].[1]   Pursuant to 18 U.S.C. § 4243(b), this Court ordered that Harris be evaluated to assess whether his release would create a substantial risk of bodily injury to another person or serious damage to another's property due to a present mental disease or defect [ECF #100].

On December 3, 2024, the Court and the parties received an evaluation from the Bureau of Prisons concluding that the defendant currently suffers from a mental disease or defect, which should he be released, would create a substantial risk of bodily injury to another person or serious damage to the property of another. The evaluation further concluded that the defendant meets criteria for commitment under Title 18, U.S. Code, section 4243, and recommended mental health treatment at a suitable facility.

A hearing is currently scheduled for December 19, 2024 to determine whether the defendant should be released into the community or be committed to a psychiatric hospital based on his risk of danger to others and his mental state, pursuant to 18 U.S.C. § 4243(e).

---

[1]The government notes that, pursuant to the express terms of the Stipulations for Bench Trial, the government did not agree to the conclusions contained in the insanity reports, but rather agreed to their admissibility "without objection."   ECF # 81.   The government had and has reservations about the application of the legal standards of "wrongfulness" and the "nature and quality" of the acts.   Simply put, the government wants to make clear that although it certainly understands and accepts the Court's determination, it is not agreeing that those determinations bind the government in any other proceeding.   *See*, for example, *United States v. Carbullido*, 307 F.3d 957 (9th Cir. 2002).

## II.    ARGUMENT AND AUTHORITY

Upon the Court's verdict of not guilty only by reason of insanity, 18 U.S.C. § 4243 (a) requires that the defendant be committed to a suitable facility until such time as he is eligible for release pursuant to subsection (e).   In *United States v. Williams*, 70 F.4th 359, 362 (6th Cir. 2023), the Sixth Circuit Court of Appeals gave a comprehensive outline of the federal insanity process and procedures.   Starting with the backdrop to § 4243, the Court noted that for most of American history, federal criminal law gave juries two options in a criminal case: guilty or not guilty. This did not preclude a successful insanity defense. It just meant that the defendant's mental health became a potential reason for finding an absence of guilt, say because the defendant, temporarily or more permanently, did not have the capacity to form the requisite mental state to violate the law. In this context, defendants who prevailed in mounting an insanity defense received the same benefit as anyone else found not guilty in a criminal case: release into society. *Id*., *citing Shannon v. United States*, 512 U.S. 573, 575-76, 114 S. Ct. 2419, 129 L. Ed. 2d 459 (1994).   The federal statutes did not require civil commitment for insanity acquittees; they were allowed to go free unless state authorities instituted commitment proceedings under the relevant jurisdiction's law.   *Id*.   The *Williams* Court noted that the acquittal of John Hinckley, Jr. led to the passage of the Insanity Defense Reform Act (IDRA) in 1984, overhauling the federal insanity defense.   *Id*.

The IDRA created a special verdict of "not guilty only by reason of insanity." 18 U.S.C. § 4242(b)(3). It placed the burden of proof on the defendant to establish insanity, "an affirmative defense to be proved by the defendant by clear and convincing evidence." *Shannon*, 512 U.S. at 577; *see* 18 U.S.C. § 17.   At the same time, to

"ensure[] that a federal criminal defendant found not guilty by reason of insanity will not be released onto the streets," *Frank v. United States*, 506 U.S. 932, 932 (1992), Congress created a civil commitment procedure.   *Williams*, 70 F.4th at 363, citing *Shannon*, 512 U.S. at 577. The procedure embodied "a clear legislative judgment" that insanity acquittees "should be presumed dangerous." *United States v. Gutierrez*, 704 F.3d 442, 453 (5th Cir. 2013). But Congress also recognized that a mental illness diagnosis did not amount to a life sentence. It permitted acquittees to obtain release from a hospital if they could show that they were no longer a danger to the public. *See Shannon*, 512 U.S. at 577.

Section 4243 of Title 18 creates the civil-commitment framework.   After an acquittal by reason of insanity, the acquitted defendant "shall be committed" for treatment. 18 U.S.C. § 4243(a). *Williams*, 70 F.4th at 363.   To secure release, the individual must show that his "release would not create a substantial risk" to the public. *Id.* § 4243(e); *see id*. § 4243(f).   The court may impose various conditions on that release. *Id*. § 4243(f)(2).   To modify or eliminate these conditions, the individual must show that such release would not "create a substantial risk" to the public. Id. § 4243(f). Violating those release conditions may trigger recommitment.

This Court's dangerousness finding is subject to clear error review.   *United States v. Gilgert*, 314 F.3d 506, 512 (10th Cir. 2002).   After a defendant has been found not guilty only by reason of insanity, an inference of continued mental illness and dangerousness remains that justifies the acquitee's commitment for treatment. *See Jones v. United States*, 463 U.S. 354, 366 (1983).   Some of the factors a court may consider in determining whether an unconditional discharge is appropriate include, the

presence or absence of a structured environment, the defendant's medication

compliance, past aggression, as well as substance abuse.    *See United States v.*

*Benford*, 514 Fed. Appx. 861, 863 (10th Cir. 2013).

**a.    The dangerousness assessment is a factual-legal determination by the Court, not a medical decision by the BOP.**

The issue of whether the defendant has satisfied his burden of proving "that his

release would not create a substantial risk of bodily injury to another person or serious

damage to property of another due to a present mental disease or defect" is a factual-

legal determination to be made by the Court, not a medical or psychological

determination.

**b.    The Court has options including unconditional Release, commitment-then Release, or commitment.**

If the defendant fails to prove that his unconditional release is appropriate, the

court must commit him to the custody of the Attorney General. *See* 18 U.S.C. §4243(e).

Courts throughout the Country have sometimes fashioned orders to mitigate the binary

statutory structure that requires (1) unconditional release or (2) indefinite commitment.

Some Courts have fashioned orders that commit the defendant pursuant to 18 U.S.C.

§4243(e) and further find that he is suitable for release at a date certain under a

conditional release plan proposed by the BOP.    *See United States v. Alazo*, No.

20-0131 (ABJ) (D.D.C., Oct. 1, 2024), attached as Exhibit A.    Other Courts have found

that the defendant has not met his burden under §4243(d), committed the defendant,

but set a relatively short status date to reconsider the issue of dangerousness.    *See*

*United States v. Tuttle*, 5:09-CR-572 (N.D. N.Y, Dec. 19, 2011), attached as Exhibit B.

Given the permanence of the defendant's diagnosis in the present case, and the

consistency of the defendant's state, the government is asking for a status conference to

### c. The defendant is required to prove by clear and convincing evidence that his release would not create a substantial risk of bodily injury to another person or serious damage of property or another due to a present mental disease or defect.

18 U.S.C. § 4243(d) places the burden of proof on the defendant to prove at the hearing that "his release would not create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect." If the charged offenses involved bodily injury to, or serious damage to the property of, another or involves the substantial risk of such injury or damage, the defendant has the burden of proof by clear and convincing evidence. 18 U.S.C. § 4243(d). For all other offenses, the defendant bears the burden of proof by a preponderance of the evidence.

The Tenth Circuit has interpreted the language of § 4243(d) to apparently require an analysis of the general matter of the crime charged, as opposed to a factual assessment of the facts supporting the offense. *See Gilgert*, 314 F.3d at 514. In so holding, the Tenth Circuit commented that a charge of being a felon in possession of a firearm fell into the preponderance standard category. *Id. citing United States v. Bilyk*, 949 F.2d 259 (8th Cir. 1991).

With respect to threats charges, the Tenth Circuit noted that "[i]n contrast, threats do not map easily onto the taxonomy of crimes created by § 4243." *Gilgert*, 314 F.3d at 514. The Court further stated "[i]t is therefore somewhat difficult to determine whether threats as a class fit the statutory test of § 4243 because threats 'do not seem to fall squarely within either the violent or non-violent category of crimes.'" *Id, quoting*

Feinstein, *Are Threats Always Violent Crimes?*, 94 Mich. L. Rev. 1067, 1068-69 (1996).

The *Gilgert* Court held that a defendant found NGRI of making a threat against the

President of the United States "is required in a § 4243(e) hearing to prove by clear and

convincing evidence that his release would not create a substantial risk of bodily injury

to another person, or of serious damage to the property of another person, due to

mental disease or defect afflicting the defendant at that time." *Gilgert*, 314 F.3d at 515.

A more recent Tenth Circuit case offers compelling support for the Court to

consider all of the underlying facts and circumstances of the defendant's charges in

applying the correct burden of proof.    In *United States v. Livesay*, 600 F.3d 1248 (10th

Cir. 2010), the Court applied the "clear and convincing" burden of proof to a charge of

being a felon in possession of a firearm and ammunition.    *Livesay*, 600 F.3d at fn. 2.

The parties were obviously influenced by the defendant's assault of his father and his

threatening behavior with a shotgun, despite the fact that those were the subject of state

charges that were dismissed.    *See Livesay*, 600 F.3d 1249-50.

Under the guidelines established by the Tenth Circuit in *Gilgert* and *Livesay*,

Harris' threats of a mass shooting and killings would, and should, qualify for the higher

"clear and convincing" standard of proof here.    Moreover, under the circumstances of

this case, the defendant's possession of a firearm would, and should, also qualify for the

higher "clear and convincing" standard of proof.    Here, the defendant advocated for

mass school shootings and attempted to purchase a .38 caliber Smith and Wesson

ostensibly to facilitate his threats.    When confronted by police on February 1, 2022, the

defendant threatened "the more u try to stop this message the more violence u gonna

unlease."    *See also*, Former UCLA Instructor Matthew Harris Arrested In Boulder After

Extensive Police Operation, https://www.youtube.com/watch?v=04xtV3xT9kE, last accessed Sept. 30, 2024.

      **d.    The Court should consider the defendant's medication non-compliance in making its findings.**

In making its dangerousness assessment, the Court can, and should, consider the defendant's past history of medication non-compliance.   Stated another way, the defendant has the burden of proving to the Court that he will be medication compliant. *See United States v. Craig*, 967 F.2d 592 (9th Cir. 1992) (unpublished opinion) (denying petitioner's release from commitment under 18 U.S.C. § 4243(e) because petitioner becomes dangerous when medication non-compliant and because no evidence from treating doctors that petitioner would continue taking medication if released), *United States v. Session*, No. 04-783-01, 2006 U.S. Dist. LEXIS 57397, 2006 WL 2381962 (Aug. 14, 2006, E.D. PA) (defendant did not provide clear and convincing evidence that he would be medication compliant).

The mental health records bear out the importance of medication compliance, as well as a structured environment.   In her December 7, 2022 competency report, Dr. Leah Brar noted:

> Schizophrenia, but definition, is a chronic, recurring condition. Most, however, at least partially respond to consistent sobriety, a structured environment, and treatment with an antipsychotic medication. So, if Dr. Harris participates in medication management with an antipsychotic, his prognosis should be at least fair given his underlying level of intelligence.
>
> I should note, however, that psychotic disorders, if left consistently under- or un-treated, can result in symptoms that become more and more resistant to medications, resulting in longer and longer response times. Over time, this can

even lead to symptoms that can no longer respond to medications. So, if Dr.
Harris continues to fail to engage in appropriate medication management on a
consistent basis, his prognosis will worsen.

Brar report dated December 22, 2022, pg. 9.

In the Forensic Psychological Report of Dr. Elizabeth Tyner dated December 3,

2023, Dr. Tyner notes Dr. Harris' history of inconsistent medication compliance and over

use of stimulant medications. Tyner Report, p. 23, 26. Dr. Tyner also noted the

defendant's apparent skepticism that his medication regiment is required for his stability.

Tyner Report, p. 26,

   e. **The victims in this case are asking for commitment.**

   The victims in this case have a right to have input in the process of determining

whether the defendant's release would create a substantial risk of bodily injury to

another person or serious damage of property of another due to a present mental

disease or defect. *See United States v. Gagnon*, No. 2:06CR00011, 2008 U.S. Dist.

LEXIS 77267, 2008 WL 4460405 (W.D. VA, Oct. 2, 2008), *affd.* 343 Fed. Appx. 867. In

Gagnon, the defendant was acquitted of the charge of interstate stalking solely by

reason of insanity and civilly committed. The defendant's victims were permitted to

submit letters to the Court at his 4243 hearing, and the Court considered that victim

impact/input in making its 4243 determination:

> The victims both oppose conditional release. In separate written statements to
> the court, they expressed fear that the defendant will eventually cause them
> substantial harm. After the defendant became aware of these statements, he met
> with his treatment team from the federal medical center minutes before the
> hearing and for the first time acknowledged his mental illness. However, without
> further observation, the medical staff was unable to determine the sincerity of
> these remarks-- only continued evaluation of the patient at the medical facility will
> allow the treatment team to distinguish true progress from deceit.

*Gagnon*, 2008 U.S. Dist. LEXIS 77267 *4.   Further, the Crime Victim's Right Act, 18

U.S.C. § 3771 permits the victims, and requires the Court, to consider their views.

18 U.S.C. § 3771 provides, in part:

>    (a) RIGHTS OF CRIME VICTIMS.--A crime victim has the following rights:

>                          *                    *                    *

>    (3) The right not to be excluded from any such public court proceeding, unless
>    the court, after receiving clear and convincing evidence, determines that
>    testimony by the victim would be materially altered if the victim heard other
>    testimony at that proceeding.

>    (4) The right to be reasonably heard at any public proceeding in the district court
>    involving release, plea, sentencing, or any parole proceeding.

18 U.S.C. § 3771.   The government is in communication with the victims in this case.

The victims wish for the defendant to be civilly committed under 18 U.S.C. 4243

because they fear for their safety and for the community safety risk the defendant poses

upon release.

WHEREFORE, the Government respectfully submits this brief in advance of the

Court's scheduled 18 U.S.C. § 4243 hearing concerning whether the defendant's

release would create a substantial risk of bodily injury to another person or serious

damage of property of another due to a present mental disease or defect, and

respectfully asks this Court to find by clear and convincing evidence that the

defendant's release into the community would create a serious risk of bodily injury to

another person or serious damage to the person of another.

Respectfully submitted,

MATTHEW T. KIRSCH
Acting United States Attorney


By:    *s/Alison Connaughty*
        ALISON CONNAUGHTY
        Assistant U.S. Attorney
        U.S. Attorney's Office
        1801 California St., Ste. 1600
        Denver, CO 80202
        Telephone: 303-454-0108
        Fax: 303-454-0406
        E-mail: Alison.Connaughty@usdoj.gov
        Attorney for the Government


By:    *s/Jim Peterson*
        Jim Peterson
        Trial Attorney
        United States Department of Justice
        1331 F Street, N.W.
        Washington, D.C. 20530
        Telephone: 202-353-0796
        Email: James.d.peterson@usdoj.gov
        Attorney for the Government

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record in this case.
.

_s/Maggie Grenvik_____
Maggie Grenvik
Legal Assistant